IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| GARY WALTERS, ) | |
| ) | Civil Action No._____ |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FAST AC, LLC and FTL CAPITAL ) | |
| PARTNERS, LLC d/b/a FTL CAPITAL ) | |
| FINANCE, ) | |
| ) | |
| Defendants. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Gary Walters, allege violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") § 501.203; the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA"); and claims damages for fraudulent misrepresentation against both Defendants. Plaintiff also alleges violations of the Truth in Lending Act 15 U.S.C. § 1601 *et seq.* ("TILA") against Defendant FTL Capital Partners, LLC d/b/a FTL Capital Finance ("FTL").

**PARTIES**

1. Plaintiff is a natural person and resident of Ft. Myers, Florida.

2. Fast AC, LLC ("Fast AC") is a Florida limited liability company with its principal place of business at 4400 Cleveland Ave. Ft. Myers, FL 33901.

3. FTL is a foreign limited liability company with its principal address at 820 Main St, Suite 300, St. Charles, MO 63301.

**JURISDICTION AND VENUE**

4. Jurisdiction of this Court arises under 28 U.S.C. § 1331 because this case arises under TILA, a federal statute. The Court has supplemental jurisdiction over the Plaintiff's state

1

law claims under 28 U.S.C. § 1367(a) because the state law claims are so related as to form the same case or controversy.

5. Venue is proper because the alleged acts and transactions complained of occurred here and the Defendants transact and/or conduct business here.

## FACTUAL ALLEGATIONS

**I.   FTL's business model and financing agreements.**

6. The nature of in-home solicitation sales "often lead to abuses, over-reaching, misrepresentations and fraud." *Rossi v. 21st Century Concepts*, 162 Misc. 2d 932, 936 (N.Y. Misc. 1994). This is because "consumers are less defensive and more comfortable in their own homes and because of this are, especially, susceptible to high pressure sales tactics." *Rossi v. 21st Century Concepts*, 162 Misc. 2d 932, 935-36 (N.Y. Misc. 1994) (*citing State of New York v Stereo Importers,* 114 Misc.2d 864 [absence of opportunity for consumer to carefully consider a purchase])).

7. FTL specializes in easy-access financing of expensive residential HVAC equipment and services sold during in-home solicitation sales. While FTL's loans are designed to appear as open-end credit, they are not. For open-end credit, the creditor reasonably expects repeat transactions. 12 CFR 1026.2(20). In contrast, FTL grants the entire credit amount at the outset with no expectation of a repeat purchase. FTL deliberately attempts to portray the loans as open-end (they are not) for a very simple reason: FTL seeks to avoid TILA's mandatory closed-end disclosures.

8. FTL's unfair and deceptive business model relies on the HVAC contractors who act as outside sales agents. FTL trains the contractors to avoid discussing the "terms and interest

rates" with homeowners (finance charge, total of payments, or total sale price)[1]; and instead, to reveal only the minimum monthly payment. This business practice leaves the homeowner unaware of what the actual cost of credit will be. For example, an initial draw of $4,000 on a $4,000 line of credit, at 21.9%, with minimum monthly payments of 2% of the balance, with no additional advances, the balance will reduce by only $1,300 after fifteen years, with nearly $10,900 in interest paid. This deceptive practice allows contractors and FTL to hide fees in the cash price of the goods and services.

9. To complete the scheme, neither FTL nor its contractors notify homeowners of their three-day recession rights as required by Federal law. 16 CFR 429.1(a)-(b). After homeowners learn the actual cost of the credit, FTL refuses to cancel the contract.

## II. Defendants' transaction with Plaintiff.

10. Plaintiff is a 68 years old military veteran who is wheel chair bound, and has Parkinson's disease.

11. He lives with his wife in their 1,242 sq. ft. two bedroom and one bath home in Ft. Myers, Florida.

12. Plaintiff's physical and medical condition require they live on a fixed income.

13. On October 19, 2018, Fast AC's technician "Mike" performed maintenance on the air conditioning unit for Plaintiff's home.

14. During the maintenance visit, Mike sold Plaintiff on the idea of buying all new ductwork for his home.

---

[1] Exhibit A.

15. During the sales pitch, Mike claimed new ductwork would supply reliability, efficiency, and enormous money savings. He made these claims without supporting documentation.

16. He quoted Plaintiff a total "discounted" cost of $5,500, which included tax, labor, and permit. Exhibit A.

17. On information and belief, the value of the replacement Mike sold to Plaintiff is substantially less than the $5,500 Mike charged given the size of Plaintiff's home. The total price also included a hidden finance charge to cover Fast AC's financing cost.

18. A tight budget made Plaintiff reluctant, but Mike persisted, creating a false sense of urgency in Plaintiff.

19. Mike said Plaintiff would qualify for a low monthly payment of $50 if he agreed to finance with FTL that day.

20. Mike knew the representation was false because, unknown to Plaintiff, FTL's ESC Card rate sheet that Mike had showed the monthly payment would exceed $50 per month. Exhibit B.

21. Mike intended for Plaintiff to rely on his false representations so Plaintiff would agree to the transaction.

22. Relying on Mike's representation, Plaintiff agreed to allow Fast AC to perform the duct replacement, and also to financing with FTL.

23. Mike had Plaintiff sign two documents that together form the contract for the replacement ductwork. Exhibit A ("Contract").

24. Nowhere on the Contract did Fast AC inform Plaintiff as to his absolute three-day right to rescind the Contract.

25. Mike forced a snap decision on Plaintiff; a decision Mike knew Plaintiff was ill-equipped to make given his obvious mental and physical condition.

26. Mike typed the Plaintiff's credit information into the online credit application/agreement and submitted it to FTL. The Agreement is attached as Exhibit C.

27. Plaintiff never received a hard copy of the Agreement because the transaction was online.

28. Unknown to Plaintiff, Mike misrepresented the Plaintiff's credit information on the Agreement to use it as leverage if Plaintiff tried to cancel the contract. *Id*.

29. Mike intentionally concealed the Agreement's financing terms from Plaintiff.

30. Along with concealing the true financing terms, Mike never gave Plaintiff two copies of the three-day recession notice, nor did he orally inform Plaintiff of his three-day right to rescind.

31. On information and belief, Fast AC receives a monetary kick-back from FTL for arranging financing agreements.

32. After Mike left, and he thought about the purchase, Plaintiff knew it was unaffordable.

33. On October 20, 2018, the day after Mike's visit, Plaintiff called to cancel the contract and financing, but Fast AC falsely told Plaintiff could not cancel it.

34. Plaintiff knew nothing about his three-day cancellation right or how to implement it because Fast AC never gave him the statutorily required disclosures.

35. Several days later, Plaintiff received a billing statement from FTL. Exhibit D.

36. It demands Plaintiff pay $93.38; a monthly payment much higher than Mike said it would be. *Id*.

37. The statement claimed Plaintiff owed a Principal Balance of $5,500 that accrued interest at 14.99%.

38. Plaintiff never agreed to these financing terms, never agreed to pay for the Principal Balance owed, and never agreed to incur any charges.

39. It also explains that if he pays only the minimum each month, Plaintiff will have paid $11,023.92 after eleven years.

40. Plaintiff immediately contacted FTL and disputed the amount owed and the financing contract.

41. Plaintiff advised FTL he cancelled the Contract the day after Fast AC's visit on October 19, 2018.

42. Plaintiff then informed FTL that Fast AC never replaced the ductwork.

43. On information and belief, FTL never investigated the Plaintiff's claims because it was acting jointly and in concert with Fast AC to defraud Plaintiff.

44. Days later, FTL contacted Plaintiff and advised the Contract remained in effect, and further that Plaintiff had to pay the amounts owed.

45. Fast AC and FTL conspired together to support this claim.

46. FTL provided an E-Signed document allegedly confirming Fast AC performed the work on Plaintiff's home. Exhibit E.

47. Like the entire transaction with the Defendants, the E-signature on the document is fraudulent.

48. Plaintiff never signed the document and never consented to have his E-signature placed on the document.

49. To date, Fast AC has never performed the ductwork replacement on the Plaintiff's home, but FTL still demands payment every month.

50. Like Fast AC, FTL has never provided Plaintiff two copies of the three-day recession notice, nor has it orally informed Plaintiff of his three-day right to rescind.

**COUNT I AS TO FAST AC'S VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT §§ 501.203(3) AND 501.204(1)**

51. Plaintiff is a "consumer" as defined under Florida Statute §501.203(7).

52. Fast AC engaged in "trade or commerce" as defined by Fla. Stat. Ann. § 501.203(8) by selling ductwork material and services during a home-solicitation sale.

53. Fast AC employed Mike who acted within the scope of employment at all times during the transaction with Plaintiff. Fast AC is liable for the misrepresentations committed by Mike.

54. Fast AC committed the following unfair and deceptive acts to induce Plaintiff into a financing the overpriced ductwork replacement cost:

- making unsubstantiated and misleading claims about the energy efficiency, money savings, and quality of the ductwork;
- falsely representing the financing cost of the replacement ductwork;
- concealing the financing terms from Plaintiff;
- charging hidden fees in the cash price of the replacement ductwork;
- misrepresenting Plaintiff's cancellation rights;
- falsely representing Fast AC completed the replacement ductwork; and
- fabricating Plaintiff's signature on documents without authority from Plaintiff

55. Fast AC committed unfair and deceptive acts because they would likely mislead a consumer.

56. Fast AC's unfair and deceptive conduct has caused Plaintiff actual damages including but not limited to being liable to pay a debt not agreed to and the difference in market value of the ductwork and services in which Fast AC delivered them — $0 — and the market value in the condition in which Fast AC should have been delivered them $5,500 at a daily interest rate of 14.99%. for ten years.

*57.* Fast AC also committed a *per se* violation of FDUTPA when it violated the FTC's Rule Concerning Cooling-Off Period For Sales Made at Homes or At Certain Other Locations ("Cooling-Off Rule"). *Williams v. Delray Auto Mall, Inc.,* 916 F. Supp. 2d 1294, 1300 (S.D. Fla. 2013) ("A per se violation of the FDUPTA occurs when the transgression stems from " '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.'") *citing Blair v. Wachovia Mortg. Corp., No.* 11–cv–566–Oc–37TBS, 2012 WL 868878, at *3 (M.D.Fla. Mar. 14, 2012) (citations omitted)).

58. Fast AC's sale of the replacement ductwork in the Plaintiff's home is a "Door-to-Door Sale" as defined by the Cooling-Off Rule because the sale occurred at the Plaintiff's home; it was personally solicited during the visit at the Plaintiff's home; and the sale price exceeded $25. *See* 16 CFR § 429(a).

59. Fast AC is a "seller" as defined by the Cooling-Off Rule because it is engaged in the door-to-door sale of consumer goods and services like ductwork material and replacement.

60. No exception applies to the sale because Fast AC sold Plaintiff new ductwork material and labor, not replacement parts used in maintaining the air conditioning unit itself. 16 CFR 429.0(a)(5) ("The term *door-to-door sale* does not include a transaction: …In which the buyer has initiated the contact and specifically requested the seller to visit the buyer's home for the purpose of repairing or performing maintenance upon the buyer's personal property. If, in the

course of such a visit, the seller sells the buyer the right to receive additional services or goods other than replacement parts necessarily used in performing the maintenance or in making the repairs, the sale of those additional goods or services would not fall within this exclusion…")

61. Under the Cooling-Off Rule, an unfair and deceptive act or practice occurs when a seller:

> Fail[s] to furnish the buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution … and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of 10 points, a statement in substantially the following form:
>
> "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

16 CFR 429.1(a).

62. Fast AC's Contract omitted this statutorily required disclosure.

63. Further, a seller commits an unfair and deceptive act if it fails to provide a completed duplicate notice of cancellation:

> captioned either "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION," which shall (where applicable) contain in ten point bold face type the following information and statements in the same language, e.g., Spanish, as that used in the contract.
>
> Notice of Cancellation
> [enter date of transaction]
> (Date)
> You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.
>
> If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation

9

> notice, and any security interest arising out of the transaction will be cancelled.
>
> If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.
>
> If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.
>
> To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to [Name of seller], at [address of seller's place of business] NOT LATER THAN MIDNIGHT OF [date].
>
> I HEREBY CANCEL THIS TRANSACTION.
>
> (Date)
> (Buyer's signature)

16 CFR § 429.1(b)

64. Fast AC committed an unfair and deceptive act because it never provided Plaintiff with the statutorily required disclosures.

65. Fast AC also violated the Cooling-Off Rule by misrepresenting the Plaintiff's right to cancel and failing to orally inform him of his right to cancel. 16 CFR § 429.1(e),(f).

66. Fast AC's misconduct is a *per se* FDUTPA violation. Fla. Stat. § 501.203(3) ("Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2017: a)   Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 et seq.; (b)   The standards of unfairness and

deception set forth and interpreted by the Federal Trade Commission or the federal courts; or (c) Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.")

67. Fast AC prevented Plaintiff from receiving information the Cooling-Off Rule entitled him to receive. And but for Fast AC's deceptive and unfair conduct Plaintiff would not have signed the Contract.

68. Because of Fast AC's FDUTPA violations, Plaintiff is entitled to actual damages, attorney's fees and costs, rescission, and declaratory and injunctive relief. Fla. Stat. § 501.211(1)-(2).

**COUNT II AS TO FAST AC'S VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**

69. Plaintiff is a "consumer" as defined by Florida Statute § 559.55(8) because he is a natural person allegedly obligated to pay a debt for the purchase of replacement ductwork.

70. Fast AC is a "person" as defined under the FCCPA because it tried to collect a consumer debt from Plaintiff.

71. Fast AC attempted to collect a "consumer debt" from Plaintiff as defined by Florida Statute § 559.55(6) because Plaintiff was allegedly obligated to pay a debt for the purchase of replacement ductwork.

72. Fast AC asserted a known non-existent legal right to refuse cancellation of the Contract. Further, Fast AC tried to indirectly collect an illegitimate debt from Plaintiff in the monthly billing statements FTL sent Plaintiff.

73. Because of Fast AC's FCCPA violation, Plaintiff suffered substantial damage, including but not limited to the imminent risk of paying an illegitimate debt, frustration and

11

anxiety from being billed an amount not owed and receiving threats of negative credit reporting, including anxiety.

74. Plaintiff is entitled to actual damages, statutory damages, and attorney's fees and costs because of Fast AC's violation of the FCCPA. Fla. Stat. § 559.72(9).

### COUNT III AS TO FAST AC'S FRAUDULENT MISREPRESENTATION/CONCEALMENT

75. Fast AC's employee Mike falsely represented material facts during the transaction with Plaintiff.

76. Mike knowingly made material misrepresentations concerning the financing terms and the energy efficiency, money savings, and quality of the ductwork to be used.

77. Mike also omitted material information about the financing terms and information about the Plaintiff's right to cancel the Contract within three-days.

78. Mike intended Plaintiff to rely on his representations and omission to induce Plaintiff into financing the replacement ductwork.

79. Plaintiff relied on Mike's representations to his detriment.

80. Mike's fraudulent misrepresentations and omissions caused Plaintiff to enter into a contract he otherwise would not have, and they prevented Plaintiff from exercising his right to cancel the Contract.

81. Because of Mike's fraudulent misrepresentations and omissions, Plaintiff is entitled to damages including but not limited to recession of the contract. (Citation)

### COUNT IV AS TO FTL'S VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT §§ 501.203(3) AND 501.204(1)

82. Plaintiff is a "consumer" as defined under Florida Statute §501.203(7).

83. FTL engaged in "trade or commerce" as defined by Fla. Stat. Ann. § 501.203(8) by financing replacement ductwork during an in-home solicitation sale.

84. FTL contracted with Fast AC who at all times acted as its agent. FTL is liable for Fast AC's unfair and deceptive conduct.

85. Further, FTL is liable for Fast Ac's unfair and deceptive conduct under the Federal Trade Commission's Holder Rule. 16 CFR § 433.2(a).

86. FTL is liable for Fast AC's unfair and deceptive conduct including but not limited to:

- making unsubstantiated and misleading claims concerning the energy efficiency, money savings, and quality of the ductwork;
- falsely representing the financing cost of the replacement ductwork;
- concealing the financing terms from Plaintiff;
- charging hidden fees in the cash price of the replacement ductwork;
- misrepresenting Plaintiff's cancellation rights;
- falsely representing Fast AC completed the replacement ductwork; and
- fabricating Plaintiff's signature on documents without authority from

87. These are unfair and deceptive acts because they would likely mislead a consumer.

88. FTL is liable for its own unfair and deceptive conduct including but not limited to:

- failing to investigate the Plaintiff's dispute about Fast AC's misrepresentations and failure to perform the work;
- mischaracterizing the nature of the financing agreement to prevent Plaintiff from learning material financing terms;
- refusing to cancel the contract after learning of Fast AC's misrepresentations;
- misrepresenting the Plaintiff's right to cancel the contract;

- approving Plaintiff for financing despite missing credit information on the credit application; and

- acting in concert with Fast AC to defraud Plaintiff;

89. FTL's unfair and deceptive conduct has caused Plaintiff actual damages including but not limited to being liable to pay a debt not agreed to and the difference in market value of the ductwork and services in which Fast AC delivered them — $0 — and the market value in the condition in which Fast AC should have been delivered them $5,500 at a daily interest rate of 14.99%. for ten years.

90. FTL also committed a *per se* violation of FDUTPA by violating the FTC's Rule Concerning Cooling-Off Period For Sales Made at Homes or At Certain Other Locations ("Cooling-Off Rule"). *Williams v. Delray Auto Mall, Inc.,* 916 F. Supp. 2d 1294, 1300 (S.D. Fla. 2013) ("A *per se* violation of the FDUPTA occurs when the transgression stems from " '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.'") *citing Blair v. Wachovia Mortg. Corp., No.* 11–cv–566–Oc–37TBS, 2012 WL 868878, at *3 (M.D.Fla. Mar. 14, 2012) (citations omitted)).

91. Fast AC's sale of the replacement ductwork in the Plaintiff's home is a "Door-to-Door Sale" as defined by the Cooling-Off Rule because the sale occurred at the Plaintiff's home; it was personally solicited during the visit at the Plaintiff's home; and the sale price exceeded $25. *See* 16 CFR § 429(a).

92. Fast AC, acting as FTL's agent, is a "seller" as defined by the Cooling-Off Rule because it is engaged in the door-to-door sale of consumer goods and services like ductwork material and replacement.

93. No exception applies to the sale because Fast AC sold Plaintiff new ductwork material and labor, not replacement parts used in maintaining the air conditioning unit itself. 16

CFR 429.0(a)(5) ("The term *door-to-door sale* does not include a transaction: …In which the buyer has initiated the contact and specifically requested the seller to visit the buyer's home for the purpose of repairing or performing maintenance upon the buyer's personal property. If, in the course of such a visit, the seller sells the buyer the right to receive additional services or goods other than replacement parts necessarily used in performing the maintenance or in making the repairs, the sale of those additional goods or services would not fall within this exclusion…")

94. Under the Cooling-Off Rule, an unfair and deceptive act or practice occurs when a seller:

> Fail[s] to furnish the buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution … and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of 10 points, a statement in substantially the following form:
>
> "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

16 CFR 429.1(a).

95. The Application omitted this statutorily required disclosure.

96. Further, a seller commits an unfair and deceptive act if it fails to provide a completed duplicate notice of cancellation:

> captioned either "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION," which shall (where applicable) contain in ten point bold face type the following information and statements in the same language, e.g., Spanish, as that used in the contract.
>
> Notice of Cancellation
> [enter date of transaction]
> (Date)

> You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.
>
> If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.
>
> If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.
>
> If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.
>
> To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to [Name of seller], at [address of seller's place of business] NOT LATER THAN MIDNIGHT OF [date].
>
> I HEREBY CANCEL THIS TRANSACTION.
>
> (Date)
> (Buyer's signature)

16 CFR § 429.1(b)

97. Fast AC and FTL committed an unfair and deceptive act because they have never provided Plaintiff with the Cooling-Off's statutorily required disclosures.

98. FTL also violated the Cooling-Off Rule by misrepresenting the Plaintiff's right to cancel and failing to orally inform him of his right to cancel. 16 CFR § 429.1(e),(f).

99.     FTL's misconduct is a *per se* FDUTPA violation. Fla. Stat. § 501.203(3) ("Violation of this part" means any violation of this act or the rules adopted under this act and may be based upon any of the following as of July 1, 2017: a)   Any rules promulgated pursuant to the Federal Trade Commission Act, 15 U.S.C. ss. 41 et seq.; (b)   The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts; or (c)  Any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.")

100.    FTL prevented Plaintiff from receiving information the Cooling-Off Rule entitled him to receive and prevented him from exercising the right to cancel the financing agreement.

101.    Because of FTL's FDUTPA violations, Plaintiff is entitled to actual damages, attorney's fees and costs, rescission, and declaratory and injunctive relief. Fla. Stat. § 501.211(1)-(2).

**COUNT V AS TO FTL'S VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**

102.    Plaintiff is a "consumer" as defined by Florida Statute § 559.55(8) because he is a natural person allegedly obligated to pay a debt for the purchase of replacement ductwork.

103.    FTL is a "person" as defined under the FCCPA because it tried to collect a consumer debt from Plaintiff.

104.    FTL attempted to collect a "consumer debt" from Plaintiff as defined by Florida Statute § 559.55(6) because Plaintiff was allegedly obligated to pay a debt for the purchase of replacement ductwork.

105. Plaintiff told FTL about Fast AC's misrepresentations and that Fast AC never performed the work. Despite knowing these facts, FTL continued demanding the Plaintiff pay for an illegitimate debt in the monthly billing statements sent to Plaintiff.

106. Because of FTL's FCCPA violation, Plaintiff suffered substantial damage, including but not limited to the imminent risk of paying an illegitimate debt, frustration and anxiety from being billed an amount not owed and receiving threats of negative credit reporting, including anxiety.

107. Plaintiff is entitled to actual damages, statutory damages, and attorney's fees and costs because of FTL's violation of the FCCPA. Fla. Stat. § 559.72(9).

### COUNT VI AS TO FTL'S VIOLATION OF THE TRUTH IN LENDING ACT § 15 U.S.C. 1601 *et seq.*

108. FTL is a "creditor" as defined under TILA because it regularly extends "consumer credit" in connection with the sale of HVAC material and services for which the payment of a finance charge is or may be required. 12 U.S.C. § 1602(g) ("The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit … for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.")

109. FTL contracted with Fast AC who at all times acted as its agent.

110. Although its financing agreement purports to be open-end, FTL's financing agreement is a closed-end loan that required FTL to provide Plaintiff with all "material disclosures" as required by TILA and Regulation Z, before consummation of the finance transaction. 15 U.S.C. §1638(a).

111. FTL is the person to whom Plaintiff must pay the alleged debt arising from the consumer credit transaction.

112. The transaction between Plaintiff and FTL was a "consumer credit transaction" because the debt was incurred for the purchase of HVAC material and services for the Plaintiff's home. 12 U.S.C. § 1602(i) ("The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.")

113. TILA requires a creditor in a closed-end transaction to disclose:

- the "finance charge", not itemized, using that term"[2];

- The sum of the amount financed and the finance charge, which shall be termed the "total of payments"; and

- The number, amount, and due dates or period of payments scheduled to repay the total of payments.

15 U.S.C. §§ 1638(a)(3)-(6).

114. FTL violated TILA because it never clearly and accurately disclosed: the finance charge; the amount of the total of payments; nor the due dates or payment schedule to Plaintiff.

115. FTL's failure to comply with TILA prevented Plaintiff from receiving material information required under TILA.

---

[2] 15 U.S.C. § 1605(a) ("Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."

116. Because of Defendant's failure to disclose information required by TILA, Plaintiff is entitled to actual damages, statutory damages, reasonable attorney's fees and costs, and injunctive and declaratory relief. 15 U.S.C. § 1640 *et seq.*

Dated: February 4, 2019             Respectfully submitted,

*/s/ Darren R. Newhart*
Darren R. Newhart, Esq. (FL Bar No: 0115546)
E-mail: darren@cloorg.com
Secondary: karen@cloorg.com
*/s/ J. Dennis Card Jr.*
J. Dennis Card, Jr., Esq.  (FL Bar No: 0487473)
E-mail: dennis@cloorg.com
CONSUMER LAW ORGANIZATION, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 822-3446
Facsimile: (305) 574-0132

*/s/ Maria R. Alaimo*
Maria Alaimo, Esq.  (FL Bar No.: 103870)
E-mail: Maia@vilesandbeckman.com
Secondary: AOsborne@vilesandbeckman.com
VILES & BECKMAN, LLC
6350 Presidential Court, Suite A
Fort Myers, FL  33919
Telephone: 239-334-3933
Facsimile: 239-334-7105

*Attorneys for Plaintiff*