UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GARY WALTERS,

    Plaintiff,

v.                                                      Case No. 2:19-cv-70-JLB-MRM

FAST AC, LLC and FTL CAPITAL
PARTNERS, LLC, d/b/a FTL
CAPITAL FINANCE,

    Defendants.

## ORDER

Plaintiff Gary Walters moves for reconsideration of the Court's order granting summary judgment in Defendants' favor as to his claim under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f, based on lack of standing and declining to exercise supplemental jurisdiction over Mr. Walters's remaining state-law claims. (Docs. 120, 122.) After careful consideration of Mr. Walters's motion and Defendant FTL Capital Partners, LLC's ("FTL") response (Doc. 125), the Court concludes that there is no basis for reconsideration.

Therefore, the motion (Doc. 122) is **DENIED**.

### Legal Standard

Federal Rule of Civil Procedure 59(e) allows parties to file a motion "to alter or amend a judgment" no later than twenty-eight days after the entry of judgment. "The Rule gives a district court the chance 'to rectify its own mistakes in the period

immediately following' its decision." Banister v. Davis, 140 S. Ct. 1698, 1703 (2020) (quoting White v. N.H. Dep't of Emp. Sec., 455 U.S. 445, 450 (1982)).

"In the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." Lamar Advert. of Mobile, Inc. v. City of Lakeland, 189 F.R.D. 480, 489 (M.D. Fla. 1999) (citation omitted). Thus, a motion under Rule 59(e) cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Vill. of Wellington, 408 F.3d 757, 763 (11th Cir. 2005). Courts recognize three grounds to support a motion under Rule 59(e): (1) an intervening change in controlling law; (2) newly discovered evidence, and (3) manifest errors of law or fact. Banister, 140 S. Ct. at 1703 n.2; Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (citation omitted). As to the last ground, a manifest error is not "simply a point of disagreement between the Court and the litigant." Lamar Advert. of Mobile, Inc., 189 F.R.D. at 489. Rather, a manifest error "amounts to a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Shuler v. Garrison, 718 F. App'x 825, 828 (11th Cir. 2017) (quoting Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000)).

### DISCUSSION

**I.   The complaint does not include a vicarious liability TILA claim.**

The Court will start with an issue from the middle of Mr. Walters's motion: whether he pleaded a claim for vicarious liability under TILA. (Doc. 122 at 21–23.) As explained in the Court's summary judgment order, Mr. Walters's TILA claim is based on the idea that the four corners of his credit agreement with FTL should

2

have contained the statutorily mandated disclosures for a closed-end credit transaction, not an open-end credit transaction. (Doc. 120 at 23–24.) These qualitatively incorrect disclosures, Mr. Walters contends, resulted in him making an uninformed credit decision—or at least put him at risk of making one.

The problem with this argument, as the Court explained at length in its order, is that Mr. Walters did not remember reviewing or signing the credit agreement. (Doc. 120 at 7, 25–26.) In Mr. Walters's own words, a Fast AC technician named "Mike" was the one who "took care" of all the paperwork. The precise details of how Mike "took care" of the paperwork are not completely clear. But based on the record before the Court, it cannot be plausibly disputed that Mr. Walters did not rely on the incorrect open-end disclosures to make a credit decision. Indeed, his own complaint alleges that "Mike intentionally concealed the [credit agreement's] financing terms from [Mr. Walters]." (Doc. 30, ¶ 29.)

Now, after realizing the Article III implications of his narrowly pleaded claim, Mr. Walters contends that he also pleaded a theory of FTL's vicarious liability under TILA for Fast AC's (that is, Mike's) actions. (Doc. 122 at 22–23.) After another round of reviewing the complaint, the Court is confident that he did not. The allegations supporting Count VIII are all geared toward the contents of the credit agreement, not Mike's actions. (Doc. 30, ¶¶ 135–43.) Nowhere in the complaint—or, for that matter, in his response to FTL's motion for summary judgment—did Mr. Walters purport to bring a vicarious liability TILA claim. Indeed, as the Court noted in its order, all of Mr. Walters's other vicarious liability

theories are pleaded in a single, separate count.[1] (Id., ¶¶ 86–101.) There is simply no room for the Court to insert a vicarious-liability TILA claim into this case.

Mr. Walters argues that the Court took an unduly narrow reading of the complaint, and that courts must consider whether a pleading asserts plausible grounds to infer each element of a cause of action. (Doc. 122 at 21–22.) From this general proposition, he argues that the Court should have inferred a cause of action for vicarious liability under TILA based on the facts in the complaint. (Id.) Mr. Walters's conclusions do not follow. It is one thing to draw all inferences from the pleaded facts in a manner most favorable to the plaintiff; it is quite another to infer an entirely unpleaded theory from those facts. Courts are not in the business of rewriting parties' complaints to include causes of action that could have plausibly been included, especially at summary judgment. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint.").

Alternatively, Mr. Walters asks for leave to amend his complaint to clarify "that he is, in fact, alleging that FTL is vicariously liable under TILA for Mike's misconduct." (Doc. 122 at 23.) But it is far too late in the day for that. "Motions, such as motions to amend, should not be used 'to raise arguments which could, and should, have been made before the judgment is issued.'" Lussier v. Dugger, 904 F.2d

---

[1] As the Court noted, whether TILA even allows for vicarious liability is also a matter of some disagreement. (Doc. 120 at 24 n.11.)

4

661, 667 (11th Cir. 1990) (quoting Fed. Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)).

Having established the factual boundaries of Mr. Walters's TILA claim as he pleaded it, the Court will now discuss his more substantive legal arguments.

## II.     The Court did not conflate the elements of standing.

Mr. Walters argues that the Court committed a manifest error of law by conflating two different elements of Article III standing: injury-in-fact and traceability (which he refers to as "causation"). (Doc. 122 at 13–18.) Specifically, Mr. Walters believes this Court incorrectly imported too much "causation" analysis into its analysis of whether he suffered an injury-in-fact.

The Court did no such thing. Its order touches on only one element of standing: injury-in-fact. And this element has multiple layers that must be unpacked. To start, an injury-in-fact must be "concrete and particularized." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). A concrete injury is one that is "real" and not "abstract"; it must be "de facto" and "actually exist." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560 n.1). Intangible injuries may be "concrete" if they either have a close relationship to harms traditionally recognized by Anglo-American courts, or if Congress has elevated them to the status of a legally cognizable injury. Id. at 1549. Yet Congress creating a statutory right does not provide every plaintiff that invokes the statute

5

with a concrete harm. At a minimum, the statutory violation must pose "the risk of [a] real harm" that "Congress has identified." Id.

Mr. Walters opposed summary judgment primarily on the basis of an intangible informational injury. (Doc. 108 at 13–14.) He also briefly claimed that he suffered tangible injuries in the form of wasted time and money. (Id. at 14.) The Court rejected both arguments. As to intangible injury, the Court reasoned that Mr. Walters was not at any particularized risk of his credit behavior being influenced by the credit agreement having open-end instead of closed-end disclosures because he never had an opportunity to review the credit agreement in the first place. Thus, while FTL's mislabeling of its credit product (and therefore use of the wrong TILA disclosures) might be injurious to consumers in general, it did not cause a particularized injury to Mr. Walters because he never saw the incorrect disclosures. (Doc. 120 at 25–28); Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 1002 (11th Cir. 2020) ("[A] statutory violation that poses a risk of concrete harm to consumers in general, but not to the individual plaintiff, cannot fairly be described as causing a particularized injury to the plaintiff.").

As to tangible injury, the Court concluded that any tangible harm to Mr. Walters—like lost time or money—presupposes an intangible harm which the Court had already found wanting. A plaintiff cannot suffer a concrete harm based on his attempts to mitigate a nonexistent risk of injury. (Doc. 120 at 29–30); Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 931 (11th Cir. 2020) (en banc) ("[A]ny assertion of wasted time and effort necessarily rises or falls along with this Court's

determination of whether the risk posed by [defendant's] FACTA violation, as pleaded by [plaintiff], is itself a concrete harm.").

None of this analysis touches on traceability or causation—all of the cases cited in the Court's order deal with injury-in-fact. Thus, it is simply incorrect for Mr. Walters to argue that the Court has conflated injury-in-fact with any other element of standing under Lujan. Mr. Walters may have "a point of disagreement" about the applicability of these cases to his own, but that does not establish a manifest error. Lamar Advert. of Mobile, Inc., 189 F.R.D. at 489.[2]

Although not decided before the Court issued its order (and not necessary to support the order), the Supreme Court's recent decision in TransUnion LLC v. Ramirez reinforces the Court's conclusion. 141 S. Ct. 2190 (2021). Ramirez involved a class of plaintiffs who sought statutory relief against a credit reporting agency for improperly placing alerts on their credit reports, indicating that they were on a federal list reserved for terrorists and serious criminals. Id. at 2201. For a large number of the class members, the credit reporting agency did not provide the incorrect alerts to any potential creditors during the class period. Id. at 2209. The Court reasoned that those members lacked standing because "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." Id. at 2210.

---

[2] The Court acknowledges that its discussion of standing touched on issues that the parties did not brief on summary judgment. But the Court has an independent obligation to consider standing, even when the parties do not discuss it at all. Bischoff v. Osceola Cnty., 222 F.3d 874, 878 (11th Cir. 2000).

7

The Supreme Court also separately addressed a claim by the class that the credit reporting agency's mailings were "formatted incorrectly and deprived them of their right to receive information in the format required by statute." Id. at 2213. There was no evidence that anyone, other than the named plaintiff, "so much as opened the dual mailings" or "that [the plaintiffs] were confused, distressed, or relied on the information in any way." Id.. Accordingly, the class members lacked standing to bring those claims as well. The Supreme Court also ruled out a theory of informational injury because the case did not involve a public disclosure statute, and the plaintiffs did not identify any "'downstream consequences' from failing to receive the required information." Id. at 2214 (citing Trichell, 964 F.3d at 1004).

While Ramirez did not address the particularization requirement of a concrete injury, the Court has difficulty reading Ramirez as anything other than a validation of its order—particularly the opinion's discussion of the claims based on incorrect formatting, which are similar to Mr. Walters's claims in this case.

Finally, the Court is unpersuaded by Mr. Walters's use of Focus on the Family v. Pinellas Suncoast Transit Authority, which was decided nearly thirteen years before Spokeo. 344 F.3d 1263 (11th Cir. 2003). That case had nothing to do with whether a statutory violation confers Article III standing; it concerned an evangelical organization's constitutional challenge to a contractual speech restriction by a government entity. The opinion does not discuss risk of harm, intangible injuries, or tangible injuries that necessarily flow from intangible ones. Accordingly, Focus on the Family has little analogical value. And because the Court

8

has demonstrated that traceability is not at issue in this case, it need not address Mr. Walters's remaining arguments as to traceability. (Doc. 122 at 18–23.)

In fairness to Mr. Walters, the law of standing post-Spokeo has become increasingly difficult to apply. At least two Eleventh Circuit judges have recently called for a bottom-up reexamination of the doctrine. See Sierra v. City of Hallandale Beach, 996 F.3d 1110, 1115–40 (11th Cir. 2021) (Newsom, J., concurring); Muransky, 979 F.3d at 957–85 (Jordan, J., dissenting). And both of these were cited in the four-justice dissent in Ramirez, where Justice Thomas wrote, "[N]ever before has this Court declared that legislatures are constitutionally precluded from creating legal rights enforceable in federal court if those rights deviate too far from their common-law roots." 141 S. Ct. at 2221 (Thomas, J., dissenting). Nevertheless, reasonable disagreements about complex doctrinal questions are not grounds for reconsideration. The Court's ruling stands.

### III. Dismissals for lack of standing are, by definition, without prejudice.

Mr. Walters asks for clarification as to whether dismissal of Count VIII was with or without prejudice. (Doc. 122 at 23–24.) The Court's order provided that Count VIII was dismissed for lack of standing. (Doc. 120 at 31.) It goes without saying that a dismissal for lack of standing is without prejudice because standing is jurisdictional and does not implicate the merits of the underlying claim. See Enders v. Florida, 535 F. App'x 799, 803 (11th Cir. 2013) (explaining that a dismissal for lack of standing is "necessarily without prejudice" (emphasis added)). To the extent Mr. Walters would like affirmation of this well-established law in abundance of

9

caution, the Court obliges. But such an argument does not require reconsideration or amendment of the underlying order.

## Conclusion

For the reasons discussed above, Mr. Walters's motion for reconsideration (Doc. 122) is **DENIED**.

**ORDERED** in Fort Myers, Florida, on October 6, 2021.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE