UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GARY WALTERS,

    Plaintiff,

v.

                                                    Case No.: 2:19-cv-70-JLB-NPM

FAST AC, LLC and FTL CAPITAL
PARTNERS, LLC d/b/a FTL CAPITAL
FINANCE,

    Defendants.
_____/

## **ORDER**

    This matter comes before the Court on two motions for summary judgment. Defendant FTL Capital Partners, LLC's ("FTL") Motion for Summary Judgment (Doc. 146) focuses on Plaintiff's sole federal claim—a Truth in Lending Act ("TILA") claim, arguing that it should be dismissed and that the Court should decline to exercise supplemental jurisdiction over the parties' remaining claims. Plaintiff's Motion for Summary Judgment (Doc. 147) focuses on two state law claims—a Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") claim and a Florida Consumer Collection Practices Act ("FCCPA") claim. Plaintiff and Defendant each filed responses to one another's motions (Docs. 148, 149) and they each filed replies in support of their motions (Docs. 153, 154). For the reasons set forth below, the Court dismisses this action against FTL.

1

## BACKGROUND

### I.   Factual Background

The Court has previously entered a summary judgment order containing a robust background of this matter. (*See* Doc. 120 at 3–12). The parties' re-filed motions include no new evidence, and they cite to documents that were already in evidence when the Court entered its previous summary judgment order. (*See* Docs. 146, 147). Accordingly, the Court will include a short recitation of the salient facts, noting that the background section of its previous order (Doc. 120 at 3–12) is incorporated by reference herein.

FTL provides financing products to contractors who install heating and cooling equipment. (Doc. 104-3 at 7). Such contractors offer FTL's products to customers wishing to pay for the contractors' services through financing. (*Id.* at 11). Fast AC, LLC ("Fast AC") became an FTL-registered contractor on August 16, 2016. (Doc. 104-5 at 2–3). It remained registered with FTL until August 27, 2019, when it was "expelled" for falsely representing to FTL "various times" that it had completed installation work for customers. (*Id.* at 4; Doc. 104-6 at 13).

Mr. Walters is a retired electrician and army veteran in his late sixties who lives in Fort Myers, Florida with his wife. (Doc. 104-7 at 5, 8). He suffers from multiple health problems, including Parkinson's disease and cardiovascular issues. (*Id.* at 4). He cannot ambulate long distances without the aid of a wheelchair. (*Id.* at 7–8).

Sometime in 2017 or 2018, Fast AC contacted Mr. Walters and offered to clean his air conditioner for $35. (*Id.* at 9). A technician from Fast AC named "Mike" came to Mr. Walters's house and inspected the air conditioning unit in the attic. (*Id.* at 10). Mike showed Mr. Walters a picture on his cell phone of an air conditioner with "crud" in it, told him it was "really bad," and told Mr. Walters that he needed a new one. (*Id.* at 10). Mr. Walters agreed. (*Id.*) The next day, Fast AC took out Mr. Walters's old air conditioning unit and replaced it with a unit. (*Id.*) Later, Mr. Walters and his son inspected the old air conditioning unit, which Mr. Walters had kept for scrap, and found no "crud" in it similar to the kind Mike had shown Mr. Walters on the picture. (*Id.*) Mr. Walters decided to "go along with it" because his new air conditioner was already installed. (*Id.*)

In October 2018, Fast AC contacted Mr. Walters to conduct a free cleaning and inspection of his new air conditioning unit. (*Id.*) Mike, the same technician from the last visit, came to Mr. Walters's home on a Friday and went up to the attic without any tools or cleaning supplies. (*Id.* at 12). Mike told Mr. Walters that the "duct work [was] shot," that it would not last "another two or three weeks," and that he was going to have "really bad problems." (*Id.*) Mr. Walters initially told Mike that he did not have the money for the repair, but Mike told him that he knew of a company that could loan Mr. Walters $5,000. (*Id.*) Mr. Walters claims that Mike got on a computer and "took care" of the financing paperwork. (*Id.*) Mr. Walters's interaction with Mike produced several documents, including a credit application

3

(Doc. 104-9 at 2) and a credit agreement (Doc. 104-9 at 3–6)[1] that Mr. Walters does not remember reviewing or signing (Doc. 104-1 at 6–7) and a document that appears to be e-signed by Mr. Walters certifying that Fast AC completed the work (which it had not started) and authorizing FTL to pay Fast AC (Doc. 104-9 at 7), which Mr. Walters also does not remember e-signing (Doc. 104-1 at 6).

The next Monday, Mr. Walters states that he called Fast AC and informed the company that he had changed his mind about replacing the ductwork. (Doc. 104-7 at 13). Mr. Walters claims that he was told that the only way to "cancel the contract" was to "call the finance company." (*Id.*) Mr. Walters asked the Fast AC employee for the finance company's contact information, and the employee promised to call him back but never did. (*Id.*) Mr. Walters states that he repeatedly called Fast AC to obtain the contact information for the finance company but never received it. (*Id.*)

About one month later, Mr. Walters received a letter from FTL. (*Id.*) Presumably realizing that FTL was the aforementioned "finance company," Mr. Walters called FTL the next day hoping to cancel the credit agreement. (*Id.*) In short, he was unsuccessful. (*Id.*) After several frustrating phone calls with Fast AC and FTL, Mr. Walters decided he had no choice but to litigate the matter. (*Id.*; Doc. 104-1 at 7).

---

[1] There appears to be some dispute between the parties regarding whether the credit agreement and the credit application should be considered separately (Doc. 148 at 18; Doc. 153 at 7), but because this issue does not factor into the Court's decision, the Court declines to decide it.

## II. Procedural Background

The original summary judgment order in this case was entered on May 13, 2021. (Doc. 120). That order granted summary judgment as to the TILA claim and dismissed the claim for lack of standing. (*Id.* at 31). The Court also dismissed the remaining claims, which all sounded in state law, finding that it had no discretion to exercise supplemental jurisdiction over Mr. Walters's state law claims. (*Id.*) Mr. Walters then filed a Motion for Reconsideration, arguing that the Court erred as a matter of law in dismissing the TILA claim. (*See* Doc. 122). The Court denied the Motion for Reconsideration. (Doc. 131).

On November 2, 2021, Plaintiff filed a Notice of Appeal, appealing the summary judgment order and the order on the motion for reconsideration. (Doc. 132). On February 6, 2023, the Eleventh Circuit issued an opinion, reversing the Court's entry of summary judgment and remanding for additional proceedings consistent with the opinion. (Doc. 134 at 18). Specifically, while the Eleventh Circuit agreed that if Fast AC's conduct was independent of FTL, then Mr. Walters's injuries are not traceable to FTL (*id.* at 2), it concluded that Mr. Walters "sufficiently pleaded that Fast AC was acting as FTL's agent when it allegedly signed up Walters for a loan without disclosing the loan's terms." (*Id.* at 17). The Eleventh Circuit expressed no opinion on the merits of the agency claim and did not address "whether or under what circumstances a creditor may be held liable under TILA for the actions of an agent" or "whether there is sufficient evidence of an agency relationship between FTL and Fast AC." (*Id.* at 18).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). In ruling on a motion for summary judgment, the Eleventh Circuit has directed that courts "resolve all ambiguities and draw reasonable factual inferences from the evidence in the non-movant's favor." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014); *see also DA Realty Holdings, LLC v. Tenn. Land Consultants, LLC*, 631 F. App'x 817, 820 (11th Cir. 2015) ("[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may be properly granted as a matter of law.").

## DISCUSSION

FTL filed a renewed motion for summary judgment, again requesting that the Court grant summary judgment in its favor on the TILA claim. (*See* Doc. 146 at 2–3; 24). Plaintiff's partial motion for summary judgment focuses on two state law claims. Count V is a Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") claim and Count VI is a Florida Consumer Collection Practices Act ("FCCPA") claim. (*See* Doc. 147 at 3). The Court first addresses the TILA claim, the only federal claim in the Second Amended Complaint.

### I.  TILA claim (Count VIII)

The crux of the TILA claim, which is only brought against FTL, is that Mr. Walters's agreement with FTL was a closed-end consumer credit transaction, and FTL only disclosed the information necessary for an open-end credit transaction, which did not include all of the information that must be disclosed for a closed-end consumer credit transaction. (Doc. 30 at ¶¶ 136–43). To decide whether to grant summary judgment to FTL, the Court must first determine the threshold issue of whether FTL was a creditor as defined by the TILA. Because the Court finds that FTL is not a creditor under the TILA, the Court need not consider whether a creditor may be held vicariously liable for its agent's misconduct under TILA or whether Fast AC acted as FTL's agent.

    a.  <u>Whether FTL was a creditor as defined by the TILA.</u>

TILA exists "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to

7

him and avoid the uninformed use of credit." 15 U.S.C. § 1610(a). TILA and its implementing regulation, Regulation Z (12 C.F.R. part 1026), require that: (1) "creditors 'clearly and conspicuously' disclose important terms of a consumer credit transaction"; and (2) the creditor's disclosures "accurately reflect the terms of the [underlying] agreement." *Stein v. TitleMax of Ga., Inc.*, 819 F. App'x 809, 911 (11th Cir. 2020) (quoting 15 U.S.C. § 1632(a)). "Creditors who fail to comply with these requirements are subject to civil liability." *Id.* (citing 15 U.S.C. § 1640(a)).

Absent some exceptions, TILA's duty to disclose applies only to "creditors," as that term is defined by the statute. *See Parker v. Potter*, 232 F. App'x 861, 864 (11th Cir. 2007). TILA defines a "creditor" as:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). Regulation Z's definition of "creditor" tracks the statute's definition and clarifies that a down payment does not count as an installment for purposes of TILA. *See* 12 C.F.R. § 1026.2(17)(i). Regulation Z further provides that "if an obligation is initially payable to one person, that person is the creditor even if the obligation by its terms is simultaneously assigned to another person." 12 C.F.R. Part 226, Supplement I, Subpt. A. For example, where "[a]n auto dealer and a bank have a business relationship in which the bank supplies the dealer with credit sale

8

contracts that are initially made payable to the dealer and provide for the immediate assignment of the obligation to the bank," Regulation Z provides that "[b]ecause the obligation is initially payable on its face to the dealer, the dealer is the only creditor in the transaction." *Id.*

FTL claims that the facts of this case fall squarely within the simultaneous assignment situation contemplated by Regulation Z. In other words, FTL contends that this Court should grant summary judgment because "it is undisputed that FTL was an assignee of the debt 'initially payable on the fact of the evidence of indebtedness' to the Dealer—that is, Fast AC." (Doc. 146 at 12). Mr. Walters disagrees, arguing that he was never directed to pay Fast AC and that multiple employees and FTL's corporate representative understood that the credit agreement required the debt to be initially payable to FTL. (*See* Doc. 148).

Having reviewed the credit agreement, the Court fails to see how this situation differs from the example of a bank supplying the dealer with credit sale contracts that provide for immediate assignment of the obligation to a bank. The credit agreement is clear on its face that FTL is a potential assignee of the agreement. For example, the agreement states: "Dealer may assign all rights under this Agreement and any credit sale made pursuant to it . . . to FTL Capital, LLC d/b/a FTL Finance (FTL)." (Doc. 104-9 at 3). If the agreement was initially payable to FTL, that sentence would be rendered meaningless. Accordingly, the credit agreement can only be understood to mean that the debt was initially payable to Fast AC. *See FFS Data, Inc.*, 776 F.3d 1299, 1305 (11th Cir. 2015) ("[A] document

9

should be read to give effect to all its provisions and to render them consistent with each other") (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)); *see also* Restatement (Second) of Contracts § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). Accordingly, because the debt was not initially payable to FTL, FTL is not a creditor as defined by TILA.

Plaintiff argues that FTL has waived its right to argue that it is not a creditor. (Doc. 148 at 8–9). Federal Rule of Civil Procedure 8(c) requires that an affirmative defense be set forth in a defendant's responsive pleading. But "[a] defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Service, Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988). Showing that FTL is a creditor is part of Plaintiff's prima facie case in a TILA claim. *See, e.g., Parker v. Potter*, 232 F. App'x 861, 865 (11th Cir. 2007) (affirming district court's conclusion that complaint does not state a cause of action against defendant for a violation of the TILA as a creditor where plaintiff did not allege facts that support the legal conclusion that defendant was a creditor).

Accordingly, FTL's argument that it is not a creditor is not an affirmative defense, and the Court has no reason to find that this argument has been waived.

10

b. <u>Whether FTL has assignee liability under TILA.</u>

Although the Second Amended Complaint does not specifically allege that FTL is an assignee of the obligation, this Court will review the applicability of assignee liability in this matter. Subsection 1641(a) of TILA explains:

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor *only if the violation for which such action or proceedings is brought is apparent on the face of the disclosure statement*, except where the assignment was involuntary.

15 U.S.C. § 1641(a) (emphasis added). "A violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required by this subchapter." *Id.*

"Courts have held that a violation is apparent if it is 'obvious, evident, or manifest; . . . open to view, plain, [or] patent.'" *Cenat v. U.S. Bank, N.A.*, 930 F. Supp. 2d 1347, 1352 (S.D. Fla. 2013) (quoting *Holcomb v. Fed. Home Loan Mortg. Corp.*, 10-81186-CIV, 2011 WL 5080324 (S.D. Fla. Oct. 26, 2011)). "In contrast, a disclosure violation is not apparent on the face of the disclosure statement when it is apparent 'only by virtue of special knowledge, whether about the practices of other firms . . . or its own practices.'" *Id.* (quoting *Balderos v. City Chevrolet*, 214 F.3d 849 (7th Cir. 2000)).

Here, the Second Amended Complaint alleges that that although the credit agreement purported to be open-ended, it was actually a closed-end loan that required FTL to provide Plaintiff with certain information that FTL failed to provide. (Doc. 30 at ¶¶ 135–43). The Code of Federal Regulations defines open-end credit, in part, as consumer credit extended by a creditor under a plan in which the creditor "reasonably contemplates repeated transactions." *See* 12 C.F.R. § 1026.2(a)(20)(i).

The Court has reviewed both the credit application and the credit agreement and finds that whether Fast AC reasonably contemplated a repeated transaction is not apparent on the face of either of these documents. *See, e.g., Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 709–10 (11th Cir. 1998) (affirming dismissal of a TILA complaint against an assignee where court would need to "resort to evidence or documents extraneous to the disclosure statement" to determine whether there was a violation); *Ritter v. Durand Chevrolet, Inc.*, 932 F. Supp. 32, 35 (D. Mass. 1996) (assignee could not be liable for car dealer's alleged misrepresentations even where plaintiff alleged that assignee had knowledge of the dealer's practices because the violation was not apparent on the face of the disclosure statement); *see also Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 199 (3d Cir. 2000) ("Congress intended actual knowledge independent of what could be discerned from the disclosure statement to be insufficient to trigger assignee liability under § 1641(a)."). Indeed, Plaintiff's arguments that the subject loan was closed-end rely solely on FTL's corporate representative testimony and not anything on the face of

12

the credit application or credit agreement.  (*See* Doc. 148 at 20–21).  Since any TILA violation pleaded was not apparent on the face of the disclosure statement, this action cannot be maintained against FTL as an assignee.

Because FTL is not a creditor as defined by TILA and the action cannot be maintained against FTL as assignee, the TILA claim is therefore dismissed.

## II. The Court declines to exercise supplemental jurisdiction over Mr. Walters's state law claims.

As alleged in the Second Amended Complaint, this Court's jurisdiction derives from original federal question jurisdiction, 28 U.S.C. § 1331, based on federal TILA claims.  (Doc. 30 at ¶ 4).  For the reasons set forth above, Plaintiff's sole federal claim has been dismissed.  Plaintiff's remaining claims arise under Florida law.  (*See* Doc. 30).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Accordingly, the Court declines to exercise its supplemental jurisdiction over these remaining

claims.[2] *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

*-Remainder of page intentionally left blank-*

---

[2] "The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Section 1367(d) "protects plaintiffs who choose to assert supplemental state-law claims in a federal action. If the court declines to exercise supplemental jurisdiction over those claims, the plaintiff may assert them in a new action in state court without fear of being barred by the statute of limitations. This obviously protects plaintiff when state law might not have provided for tolling during the pendency of the federal-court case." 13D Charles Alan Wright et al., *Federal Practice & Procedure* § 3567.4, 458–59 (3d ed. 2008).

## CONCLUSION

It is hereby **ORDERED**:

1. FTL's Motion for Summary Judgment (Doc. 146) is **GRANTED** as to Count VIII.

2. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims in Counts I through VII.  Counts I through VII are **DISMISSED without prejudice**.

3. Because the only claims against Fast AC are state law claims and the Court has declined to exercise supplemental jurisdiction over such claims, Plaintiff shall not be permitted to file a renewed motion for default judgment against Fast AC.  *See* Doc. 61 (delaying entry of final judgment as to Fast AC until after a trial on the merits against FTL).

4. Plaintiff's Motion for Summary Judgment (Doc. 147) is **DENIED** as moot.

5. The Clerk of Court is **DIRECTED** to enter judgment accordingly, terminate any pending motions, and close the file.

**ORDERED** in Fort Myers, Florida on October 24, 2023.

*[signature]*

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE